UNITED STATES of America,
Plaintiff-Appellee,

v.

Calvin D. RAHN, Defendant-Appellant.

No. 74–1324.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 21, 1975.

Decided Feb. 28, 1975.
Rehearing Denied March 25, 1975.

Robert A. Wagner, Denver, Colo. (Marshall A. Fogel, Denver, Colo., on the brief), for defendant-appellant.

J. Terry Wiggins, Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), Denver, Colo., for plaintiff-appellee.

Before BREITENSTEIN, HILL and DOYLE, Circuit Judges.

HILL, Circuit Judge.

This is a direct appeal from a conviction for violations of 18 U.S.C. §§ 641 and 2.[1]

The issues presented in this appeal involve only the denial of suppression of evidence due to an allegedly unlawful search and seizure.

On July 10, 1973, Inspector Neal of the Alcohol, Tobacco & Firearms Bureau (ATF), Office of Inspection, submitted an Affidavit for Search Warrant to a United States Magistrate seeking a warrant to search appellant's residence. The affidavit resulted from an investigation by the ATF inspection service into alleged misuse of seized property by ATF agents. Appellant was an ATF special investigator stationed in Denver.

Based upon the affidavit, the magistrate issued the requested search warrant on July 10. The warrant was executed on July 13; searchers discovered and seized six weapons and a written list of firearms from appellant's home. Appellant and his family were on vacation during this time period. On July 13 the ATF regional director, Billy Gaunt, telephoned appellant and ordered him to return to Denver to meet with the inspection service.

The next day appellant flew into Stapleton International Airport and was met by Jim Duff, appellant's immediate supervisor and friend. Appellant had with him seven firearms which had been certified as destroyed. Appellant was taken to the ATF office in Denver; he made a lengthy incriminating statement and turned over the seven weapons to the ATF investigators.

Appellant and his former supervisor, Karl Terlau, were indicted for one count of violating 18 U.S.C. §§ 1001 and 2, and one count of violating 18 U.S.C. §§ 641 and 2. Terlau pled guilty to one count and testified at appellant's trial. The weapons and list seized in the residence search, the seven firearms appellant

---

1. 18 U.S.C. § 641 provides:

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

"Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both;

but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

18 U.S.C. § 2 provides:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

brought back to Denver, and appellant's July 14 statement were admitted as evidence. The jury found appellant guilty as to the second count, conversion of government property to his own use.

Appellant raises three issues. (1) The affidavit was based on observations of alleged unlawful activity made more than a year and a half before the application for a search warrant; consequently, the information in the affidavit was not recent enough to establish probable cause for the search warrant to issue. The residence search was unlawful and the evidence seized should have been suppressed. (2) The affidavit failed to give the magistrate probable cause to believe the weapons were, in fact, located in appellant's residence. (3) The evidence obtained from appellant on July 14, 1973, was the direct result and product of the unlawful residence search.

■ We are guided by several general principles in our review of this affidavit. Affidavits for search warrants are to be tested and interpreted in a common sense and realistic manner. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Reviewing courts should give deference to determinations of probable cause by issuing magistrates. United States v. Neal, 500 F.2d 305 (10th Cir. 1974); United States v. DePugh, 452 F.2d 915 (10th Cir. 1971), cert. den'd, 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805 (1972); United States v. Berry, 423 F.2d 142 (10th Cir. 1970).

It is generally recognized that probable cause is one of probabilities and a valid warrant may issue when the circumstances before a proper officer are such that a person of reasonable prudence would believe that a crime was being committed on the premises to be searched or evidence of a crime was being concealed there. United States v. Neal, supra.

Probable cause is not determined by hindsight but as of the time the affidavits were presented to the magistrate. Schoeneman v. United States, 115 U.S. App.D.C. 110, 317 F.2d 173 (1963).

Doubtful cases should be largely resolved by the preference to be given warrants. United States v. Ventresca, supra.

■ Appellant's first attack on the affidavit's sufficiency deals with the timeliness of the information. Time is a crucial element of probable cause. United States v. Holliday, 474 F.2d 320 (10th Cir. 1973); United States v. Johnson, 461 F.2d 285 (10th Cir. 1972). The Supreme Court has discussed this element of probable cause:

". . . the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

In Neal, this Court stated that "[p]robable cause existing at some time in the past will not suffice unless circumstances exist from which it may be inferred that the grounds continued to the time the affidavit was filed." However, probable cause is not determined by merely counting the number of days between the time of the facts relied upon and the warrant's issuance. United States v. Johnson, supra.

The search warrant here was issued on July 10, 1973; the affidavit detailed several occurrences involving the property sought. Terlau, in an interview the day before the warrant issued, stated that in 1971 he and appellant each had agreed to take several of the weapons. Terlau also said that appellant had commented when they took the weapons that several of the weapons were too nice to destroy and would be worth more money if kept for several years. The affidavit recounted Special Agent Carl Newton's statement in which he remembered seeing appellant in the fall of 1971 using a Browning over/under 12 gauge shotgun identical to one Newton had seen in the ATF vault. That weapon was one subject to the destruction order according to the affidavit. The affidavit indicated Terlau had sold his weapons to Lakewood Pawnbrokers; the affiant had investigated two pawnbrokers in Lakewood and had checked the Denver Police

pawn shop records. This search had not revealed any sales of weapons by appellant.

The affidavit clearly would give a magistrate probable cause to believe appellant had taken some of the weapons. Because of the unique facts of this case, we believe the affidavit also gave the magistrate probable cause to believe appellant still possessed the weapons in spite of the lapse of time between the facts relied on and the warrant's issuance. Newton's account indicates appellant had appropriated at least one of the weapons for his personal use. This appropriation combined with the comment Terlau remembered that appellant believed the weapons would appreciate in value would give more than a suspicion appellant still possessed the weapons. The investigation, although far from extensive, disclosed appellant apparently had not disposed of the weapons in the manner Terlau had utilized. Furthermore, the magistrate, employing the common sense interpretation of affidavits approach, may have recognized appellant's awareness, as an ATF agent, that in selling the guns he would be taking a real risk of detection. Consequently, we believe the affidavit provided circumstances from which it could be inferred that the probable cause clearly existing in the past continued to the time the affidavit was filed. The affidavit information was recent enough to establish probable cause in this case.

Appellant also attacks the sufficiency of the affidavit by contending it did not show probable cause to believe the articles listed in it would be found in the residence. Both parties cite United States v. Lucarz, 430 F.2d 1051 (9th Cir. 1970), where the Ninth Circuit upheld the search of a residence and said:

"The situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation . . . but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property."

*Lucarz* and the other cases cited by appellant and the government state the general rules in this area; those cases, however, are persuasive only to the degree they present facts similar to those now before the court. The issue for our determination is whether the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles' sought were located at appellant's residence. Lucarz v. United States, *supra*. The affidavit need not contain information providing ". . . certainty that the objects sought will be found as a result of the search." Porter v. United States, 335 F.2d 602 (9th Cir. 1964), cert. den'd, 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965).

As appellant points out, the affidavit does not contain anyone's observation of the property at the residence; that missing information, however, is not fatal to a determination that probable cause existed to search the residence. *See* United States v. Mulligan, 488 F.2d 732 (9th Cir. 1973), cert. den'd, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974); United States v. Lucarz, *supra*. The affidavit, as we have determined, gave probable cause to believe appellant still possessed the weapons. The affidavit contained the report indicating appellant had used one of the weapons for hunting purposes. The statement concerning the guns' appreciation potential indicates appellant would have given some care to their storage. As Chief Judge Arraj stated, in denying the original motion to suppress: "It is reasonable to assume that his house was where he kept things and it is pretty normal I believe for individuals to keep weapons in their homes, particularly hunting weapons and weapons which may be kept for the safety of the family." Here an ATF agent was believed to possess the weapons; certainly, he would not have had the weapons

at his office. Admittedly there are other places where the guns *might* have been stored; yet, we believe these facts and circumstances gave the magistrate probable cause to believe the weapons would be found as a result of the search of appellant's present residence.

In making these decisions concerning the affidavit's sufficiency, we have given deference to the issuing magistrate's determination and have remembered that even doubtful cases are to be resolved largely by the preference to be given warrants. Having determined that the affidavit provided probable cause for the search warrant to issue, we hold the search was proper. Consequently, we do not reach appellant's third contention concerning "fruit of the poisonous tree".

Affirmed.