UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerry F. BRINKLOW,
Defendant-Appellant.

No. 76–1587.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 17, 1977.

Decided Aug. 15, 1977.

C. Scott Crabtree, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Jeffrey A. Springer, Denver, Colo., for defendant-appellant.

Before HOLLOWAY and BARRETT, Circuit Judges, and BOHANON, Senior District Judge.*

BOHANON, Senior District Judge.

Jerry F. Brinklow (Brinklow) appeals his conviction on each count of a four count indictment charging him with interstate transportation of explosives by a convicted felon [18 U.S.C. §§ 842(i), 844(a) and 2], destruction of a building used in regulation of commercial traffic [18 U.S.C. §§ 844(i) and 2], transportation of stolen explosive material [18 U.S.C. §§ 842(h), 844(a) and 2], and illegal possession of a firearm, i. e. dynamite [26 U.S.C. §§ 5861(d), 5871 and 5872].

Phillip P. Hermanson (Hermanson), defendant's accomplice, testified at trial that in the fall of 1974 he and defendant discussed the feasibility of constructing a radio controlled explosive device, and that thereafter they took a trip to Fernley, Nevada, and stole dynamite later used to build a bombing device. Hermanson testified also that during the early morning hours of December 11, 1974, while en route home from a trip to Rock Springs, Wyoming, Brinklow and he blew up the Port of Entry building at Colorado Springs in order to test the efficacy of the device they had constructed. He further related that Brinklow owned a motor home in which the two men traveled while engaged in their illicit activities. Salient portions of Hermanson's testimony were corroborated by a truck driver who testified that late on the night of December 10, a motor home similar in description to Brinklow's and containing two men, passed his truck on the highway to Colorado Springs, and that shortly before the explosion he drove by the Port of Entry and observed the same motor home parked adjacent thereto.

* Of the Western District of Oklahoma, sitting by designation.

The issues presented for this court's review are whether the trial court erred:

1. In denying defendant's motion to suppress all evidence obtained from the search of his motor home.

2. In denying defendant's motion to strike from the indictment and jury instructions all references to defendant's previous felony convictions.

3. In refusing to instruct the jury that the defendant could be acquitted on the basis of uncorroborated testimony, after instructing that the defendant could be convicted on the basis of such testimony.

4. In denying defense counsel's request to call Special Agent Barbat to the stand during the government's case-in-chief for an *in camera* hearing on the possible existence of wiretaps.

## I.

In November 1975 Special Agent Damon Barbat (Agent Barbat) of the Bureau of Alcohol, Tobacco and Firearms, the investigating officer assigned to the Port of Entry explosion, in the course of his investigation contacted Hermanson. At that time Hermanson made statements implicating himself and Brinklow in the bombing and detailing occurrences leading up to and surrounding the event. Hermanson's statements included allegations that Brinklow's motor home contained citizens band radio equipment, originally intended to electronically detonate the bombing device, a police radio scanner utilized by the pair to avoid police detection, and a notebook delineating dates and mileage figures of trips taken in the motor home. Special Agent Barbat had periodically observed the location of the motor home for some months, including a brief period when it was located at Hermanson's residence. Based largely on Hermanson's statements, a search warrant was obtained. A search of the motor home yielded the (a) anticipated radio equipment, (b) police scanner and (c) notebook whose admissibility defendant has challenged. Defendant asserts that the affidavit used to secure the search warrant presented no reason to believe that Hermanson viewed the

items inside the motor home more recently than eleven months prior to the warrant's execution. Defendant contends that the apparent eleven month interval between Hermanson's observations and the warrant's execution rendered the information stale, that at the time the warrant was issued no probable cause existed to believe the items were still in the mobile home, and that resultantly the search was illegal and the evidence inadmissible. We disagree.

■ The Fourth Amendment requires that search warrants issue only upon probable cause. This entails something more than mere suspicion and something less than that quantum of evidence necessary to sustain a conviction. *United States v. Berry*, 423 F.2d 142 (10th Cir. 1970). There appears to be no controversy that probable cause was presented that the items being sought were in the motor home at one time. Such allegations came directly from Hermanson, an admitted participant in the crime with personal knowledge. "Admissions of crime, like admissions against proprietary interest, carry their own indicia of credibility—sufficient at least to support a finding of probable cause." *United States v. Neal*, 500 F.2d 305, 308 (10th Cir. 1974).

■ Probable cause existent in the past, however, continues to exist only to the extent that its underpinning probabilities endure. The element of time is crucial to its concept. *United States v. Johnson*, 461 F.2d 285 (10th Cir. 1972). Probable cause ceases to exist when it is no longer reasonable to presume that items, once located on the premises, are still there.

The substantive question is whether probable cause existed at the time the warrant issued to believe that the items were still located at the home. *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975).

■ Probable cause is not determined by merely counting the number of days between the time of the facts relied upon and the warrant's issuance. *United States v. Rahn, supra; United States v. Johnson, supra.* The significance of the length of time

# 1006

between the point probable cause arose and when the warrant issued depends largely upon the property's nature, *United States v. Rahn, supra; United States v. Johnson, supra* ; and should be contemplated in view of the practical considerations of every day life. *United States v. Johnson, supra.* The test is one of common sense. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

As properly emphasized by Chief Judge Arraj at the hearing on the motion to suppress, the articles in controversy were items which could reasonably be expected to be kept in the motor home for extended periods of time. (R. Vol. 1, P. 38) Each item was designed for long term use and was likely still to be functional. Each had been seen inside the motor home within the last year, was logically tied to the vehicle by the purpose it served, and was likely to be kept there. None of the items was contraband or inculpatory per se or likely to be disposed of for any other readily apparent reason.

■ Reviewing courts should give deference to determinations of probable cause by issuing magistrates. *United States v. Rahn, supra.*

■ The affidavit need not contain information providing certainty that the objects sought will be found in the search. *United States v. Rahn, supra.* The issue is not whether there were other places to which the articles might have been removed, but rather whether the facts and circumstances taken as a whole gave the magistrate probable cause to believe that the desired items would be found in the search. See *United States v. Rahn, supra.* It is our determination that they did.

We find no error in the trial court's denial of the motion to suppress.

## II.

■ Prior to trial, defendant requested that the court strike from the indictment and keep from the jury all references to his previous felony convictions. Possessing a previous felony conviction represented an essential element of the count charging defendant with interstate transportation of explosives by a convicted felon, and defendant was willing to stipulate to the conviction outside the presence of the jury. The defendant proposed that jury instructions specify only those essential elements of the crime other than that of a previous felony conviction and that the jury be instructed that there were additional necessary elements with which they did not need to be concerned.

While the government does not have an unequivocal right to refuse any and every offer by a defendant in a criminal proceeding to stipulate to facts, generally the government is not required to accept such offer and may insist upon proving all essential elements of its case. *United States v. Scott*, unpublished opinion No. 75–1745, filed December 20, 1976. Whether the government should be required to accept defendant's offer to stipulate as to the fact of a prior felony conviction is a discretionary matter with the trial court. *United States v. Scott, supra; United States v. Conner*, No. 74–1385, filed July 9, 1975.

The gravamen of this offense, of course, does not exist in merely transporting explosives interstate, an act innocent in and of itself. Instead, the statute prohibits such activity only by one who has previously been convicted of committing a felony. *United States v. Scott, supra.* The trial court determined that the jury should be fully apprised of the offense charged and all of its attendant elements. Such decision in no manner represented an abuse of discretion.

## III.

■ Defendant also takes exception to the trial court's refusal to substitute defendant's proposed instruction on evaluating accomplice testimony in the place of a standard instruction on the subject which has oftentimes been approved on appeal.[1]

---

1. The court instructed as follows:
"I instruct you, ladies and gentlemen, that an accomplice is one who unites with another person in the commission of a crime voluntarily and with common intent. An accomplice does not become incompetent as a

See Devitt and Blackmar, Federal Jury Practice Instructions, 2nd Edition, 1970, Section 12.04; *United States v. Reid*, 437 F.2d 94, (10th Cir. 1971); and *United States v. Carpenter*, 535 F.2d 1218 (10th Cir. 1976).

Defendant alleges that it was error for the court to instruct the jury that they could convict on the uncorroborated testimony of an accomplice, while failing to inform them that alternatively they could acquit on the basis of such testimony. Had exculpatory accomplice testimony been offered into evidence the instruction as given might well have been inappropriate. See *Cool v. United States*, 409 U.S. 100, 103 n. 4, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972).

Interestingly, it is problematical whether the adoption of defendant's tendered instruction would have resolved the issue defendant now addresses since it too instructs the jury that a defendant may be convicted upon the uncorroborated testimony of an alleged accomplice if believed beyond a reasonable doubt, while failing to instruct the jury that they might acquit on the basis of such.[2]

Regardless, the direction and substance of Hermanson's testimony tended only to establish Brinklow's guilt. While an acquittal might well have resulted from a failure on the part of the jury to believe Hermanson's testimony, such testimony, in and of itself, in no way tended toward acquittal. To have instructed the jury that they could acquit defendant on the basis of Hermanson's testimony would have been to contort

the plain and simple meaning of the terms used and would have served to confuse the law to the jury, rather than clarify it.

The court carefully emphasized to the jury that the defendant could only be convicted if the prosecution established his guilt beyond a reasonable doubt. The court informed the jury that conviction could rest on the uncorroborated testimony of an accomplice, which is correct, but the court went on to emphasize that such accomplice testimony should be received with caution and weighed with great care, and that the testimony of Hermanson, specifically, should be viewed with caution since he testified under a grant of immunity. The jury was also told that in assessing Hermanson's credibility they could consider his general reputation for veracity in the community where he lived and the fact that he was a convicted felon.

The Court's instructions, taken as a whole, represented an accurate and well-rounded statement of the applicable law. They contained no error.

IV.

During the trial defendant requested that an *in camera* hearing be conducted and Agent Barbat questioned to determine if Defendant had been victimized by illegal wiretapping. Defense counsel's concern arose due to his inability to discern how Brinklow and Hermanson originally became suspects in the case, and counsel sought to

witness because of participation in the crime charged. On the contrary, the testimony of an accomplice alone if it is believed by the jury may be of sufficient weight to sustain a verdict of guilty although not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is always received with caution and is to be weighed with great care. You should never convict the defendant upon the unsupported testimony of an alleged accomplice alone, unless you believe the testimony of the alleged accomplice beyond a reasonable doubt."

2. "Defendant's Tendered Instruction No. 1
An accomplice is one who allegedly unites with another person in the commission of a

crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice may be received in evidence and considered by the jury even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is always to be received with caution and suspicion and weighed with great care.

You should never convict a defendant upon the uncorroborated testimony of an alleged accomplice, unless you believe that uncorroborated testimony beyond a reasonable doubt."

determine by questioning Barbat whether the FBI's investigatory interest in the men originated from an illegal wiretap.

There is nothing in the record in this case implying the existence of a wiretap. The issue was initially raised in defendant's pretrial Motion for Discovery, which requested a transcript of any wiretapping in the case. The record made at a hearing on the motion discloses that a determination had been made that no such wiretapping had occurred. At the point defendant requested an *in camera* session, the Assistant United States Attorney prosecuting the case again reiterated the nonexistence of a wiretap. Also at that time the prosecuting attorney asserted that Agent Barbat's attention was focused on Brinklow and Hermanson following his introduction to Brinklow's wife and a subsequent discussion with her.

The session defendant requested would have been unorthodox and disruptive of the trial's progress. Defendant's request was founded on nothing more than tenuous suspicions and was aptly characterized by the court as connoting a "fishing expedition." Certainly the trial court possessed the authority to grant defendant's request if the circumstances warranted. Its refusal to do so, however, in no way represented an abuse of discretion.

The simple issue presented is whether the trial court erred in refusing to call Agent Barbat to be examined on this issue out of turn and out of the jury's presence. We hold that the trial court's refusal was not error. We do not reach the issue of whether defendant possessed the right at the time Agent Barbat testified to question him on the existence of a wiretap since the defendant never sought to so cross-examine.

Affirmed.