**UNITED STATES of America, Plaintiff,**

v.

**Michael KUNTZ, Defendant.**

**No. 79 Cr. 912 (RWS).**

United States District Court,
S. D. New York.

March 5, 1980.

William M. Tendy, Acting U. S. Atty., S. D. N. Y., New York City, for the United States of America by Kathleen Roberts, Asst. U. S. Atty.

Stanley L. Siegel, New York City, for defendant by Norman T. Corenthal, New York City.

## OPINION

SWEET, District Judge.

Michael Kuntz is named in a three count indictment charging him with manufacturing and attempting to manufacture methylene dioxy amphetamine ("MDA") and amphetamine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 846, and with possession with intent to distribute MDA in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B). Kuntz now moves pursuant to Rule 41(e), Fed.R.Crim.P., to suppress certain physical evidence seized pursuant to a search warrant due to the insufficiency of the information provided and alleged material misstatements in the affidavit. The motion is denied.

The affidavit in support of the search warrant application was sworn to by Alfred Cavuto, a special agent of the Drug Enforcement Agency. A copy of the affidavit is annexed as Appendix A. Based on the affidavit, a federal Magistrate determined that there was probable cause to believe that chemicals and equipment used in the manufacture of amphetamines and methamphetamines were being concealed at

Apartment 406, 83 Canal Street in Manhattan, and executed a search warrant for these premises. The search warrant permitted destruction of any lithium aluminum hydride found, due to the dangerous nature of this chemical. Cavuto searched the apartment, and recovered a large inventory of chemicals and equipment and documentary evidence of the purchase of these chemicals and equipment. Samples and photographs were taken of certain volatile or dangerous chemicals, and the remainder of these substances was destroyed.

The seizure of these items provided probable cause for the arrest of the defendant, Michael Kuntz, which was effected by DEA Agent Williams at 6:30 p. m. on November 27, 1979. A plastic bag and a metal can containing a powder, later determined to be MDA, were seized from Kuntz at the time of the arrest.

Kuntz claims first that the information set forth in the affidavit failed to establish probable cause, and second that Paragraph 10 of the affidavit contains a material misrepresentation which requires the voiding of the search warrant under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

■ Kuntz's argument with respect to the absence of probable cause is rejected. In *United States v. Jackstadt*, 617 F.2d 12 (2d Cir. 1980), the Court of Appeals recently upheld the validity of a search warrant on facts strikingly similar to those presented in this case. The only averment in the *Jackstadt* affidavit of a material fact which was not present in Cavuto's affidavit was a statement that Jackstadt had previously been involved in a drug–related arrest. This absence is counterbalanced by several circumstances presented here which were not present in *Jackstadt.* In particular, Cavuto's affidavit detailed a prior purchase of lithium aluminum hydride by Kuntz under a different name, "Kaye," than that used on November 26 (¶ 8), the use of a false address when purchasing the hydrogen chloride at the chemical company (¶ 1), the provision of a different false address to a police officer in the Port Authority terminal

(¶ 5), the chemical odors perceived by Cavuto on the fourth floor of 83 Canal Street (¶ 6), Cavuto's assistance in carrying the cannister to the doorstep of Number 406 (¶ 6), the painting over of the windows at that address (¶ 7), Kuntz's unusual behavior in extinguishing the light when Cavuto returned his umbrella (¶ 6), the detection by Williams of an ether smell outside the building (¶ 7) and the report by the rental agent that Kuntz rented two apartments under a third alias, "Michael Kay," and that the second apartment had been rented after tenants at the first apartment building had complained about intoxicated visitors, chemical odors and erection of a flue pipe by Kuntz (¶ 10).

■ Kuntz contends that several of these averments were improper and accordingly could not be considered by the Magistrate in assessing probable cause. First, Kuntz contends that the description of the prior purchase of lithium aluminum hydride (¶ 8) was "stale" and thus was improperly considered by the Magistrate. Under *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed.2d 60 (1932), the facts presented in an affidavit must be sufficiently related to the time of issuance of the warrant to establish probable cause at that time. However, courts have held that when a continuing pattern of illegal activity is described in the affidavit, the issue of staleness must be evaluated liberally. *United States v. Hyde*, 574 F.2d 856, 865 (5th Cir. 1978); *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972). Here the averments of complaints about chemical odors and a flue pipe addressed to the rental agent by Kuntz's cotenants and Kuntz's rental of a new apartment (¶ 10) indicated continuing illegal manufacture of controlled substances. The report of Kuntz's prior purchase under a false name of a large quantity of lithium aluminum hydride, a substance used in the production of illegal drugs, supported the inference that the hydrogen chloride gas purchased on November 26 under a different alias was to be used in an ongoing drug manufacturing operation. Under these circumstances, the information

concerning the prior purchase was not unduly stale.

Second, Kuntz argues that Cavuto's statement that he perceived "chemical odors" on the fourth floor of 83 Canal Street (¶ 6) is unacceptable since Cavuto did not state his qualifications to identify chemical scents and since the detection of merely general chemical smells, as opposed to the scent of a particular substance, cannot supply probable cause. The requirement that an affiant report his olfactory qualifications and designate a specific chemical odor has been applied only in situations in which odors are the sole factor establishing probable cause. *United States v. Pond,* 523 F.2d 210, 212–13 (2d Cir. 1975), *cert. denied,* 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976); *United States v. Lewis,* 392 F.2d 377, 379 (2d Cir.), *cert. denied,* 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968). In this case the detection of chemical scents was only one of the factors which supported probable cause. In view of the large variety of chemicals ultimately seized from Kuntz's apartment it would have been remarkable if Cavuto had been able to isolate distinctive aromas. Moreover, the Magistrate could reasonably infer that a DEA agent such as Agent Cavuto would be able to discern scents associated with the manufacture of controlled substances.

On the other hand, Kuntz correctly asserts that the alleged detection by Agent Williams of an ether odor on the outside of the building (¶ 7) is unacceptable. The affidavit failed to state any basis from which Agent Williams could have concluded that a smell perceived at street level from the exterior of the building emanated from a specific room located on the fourth floor. However, even purged of this speculative statement, the affidavit contained ample support for a finding of probable cause. *United States v. Jackstadt, supra.*

Kuntz contends that the recitals of statements made by the rental agent of the 83 Canal Street building to Agent Williams (¶ 10) are also not competent proof of probable cause, since the statements involve double and triple hearsay and since the affidavit fails to state a basis for the rental agent's reliability. The Court of Appeals has recognized that the requirement of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), that the affiant make a showing that an informant is reliable, is "addressed to the particular problem of professional informers." *United States v. Burke,* 517 F.2d 377, 380 (2d Cir. 1975). In *Burke,* the court upheld an affidavit which relied on information supplied by an observer, but which contained no recital of the observer's prior reliability. The court recognized that a contrary result would prevent the use of hearsay statements to support a warrant, as authorized by Rule 41(c)(1), Fed.R.Crim.P., whenever the statements are supplied by a witness, observer, or other disinterested source of information. In *United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976), hearsay statements by "an identified bystander with no apparent motive to falsify" were held to support a search warrant, despite the absence of an allegation of prior reliability, where the informant "was not an anonymous paid informer." *See also United States v. Dunloy,* 584 F.2d 6 (2d Cir. 1978).

In this case, as in the cited cases, the rental agent designated in the search warrant was not a paid informant, and had no apparent motive to lie. The rental agent could reasonably be expected to have been the recipient of complaints from Kuntz's cotenants and to have advised Kuntz of these complaints as part of his job duties. Under these circumstances, the affidavit was not defective for lack of a showing of reliability.

The fact that the averments concerning the rental agent constituted double and triple hearsay also does not render these averments incompetent. Multiple hearsay in an affidavit may be considered in establishing probable cause if, under all the circumstances, the hearsay statements can reasonably be said to be trustworthy.

United States v. Agrusa, 541 F.2d 690, 694 (8th Cir. 1976), cert. denied, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977); United States v. Fiorella, 468 F.2d 688, 691 (2d Cir. 1972), cert. denied, 417 U.S. 917, 94 S.Ct. 2622, 41 L.Ed.2d 222 (1974). The circumstances of this case support the reliability of the multiple hearsay. Cavuto received his information from DEA Agent Williams, the investigating officer, who in turn gained his knowledge from the rental agent, also a presumptively reliable source. The rental agent stated that he had received complaints from cotenants, that he had written a letter to Kuntz describing these complaints, and that, in response to the letter, Kuntz had rented a new room. The averments as to what the rental agent himself did, though they involved double hearsay, were sufficiently reliable to be considered by the Magistrate and supported a finding of probable cause under the circumstances of this case. See United States v. Fiorella, supra at 691–692. The averments concerning the complaints of cotenants constitute triple hearsay. However, it was not improper or unreasonable for the Magistrate to infer that tenants living near Kuntz would be likely to perceive unusual odors emanating from his apartment, a large number of visitors at all hours of the day, and the construction of a flue pipe to the roof of the building, and to complain to the rental agent about these offensive conditions. These reports were sufficiently reliable, under all the circumstances, to warrant consideration of them in assessing probable cause. The additional reports that Kuntz's visitors were intoxicated were unduly speculative, but were not material to a finding of probable cause.

■ The courts have emphasized that in determining whether probable cause was established, supporting affidavits should be read in a "commonsense and realistic fashion," United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), and that "in a close case any doubts should be resolved in favor of upholding the warrant." United States v. Jackstadt, supra at 14. "A magistrate's finding of probable cause is itself a substantial factor tend-

ing to uphold the validity of the warrant." Id.; see also United States v. Freeman, 358 F.2d 459, 462 (2d Cir.), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966). The competent evidence presented to the Magistrate in this case provided adequate support for a finding of probable cause to believe that criminal activity was being conducted in Room 406 at 83 Canal Street.

■ Kuntz's second line of attack on the search warrant is addressed to alleged material misrepresentations contained in paragraph 10 of the affidavit. Paragraph 10 incorrectly states that Kuntz first leased a room at 83 Canal Street and then, in response to the rental agent's warnings, leased the apartment at East 13th Street, while in fact the order was reversed. Kuntz also objects to the description of the Canal Street premises as an "apartment," since Room 406 is located in a commercial building. Kuntz claims that these errors constituted intentional or reckless misstatements which rendered issuance of the search warrant invalid under the test set forth in Franks v. Delaware, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2685, 57 L.Ed.2d 667 (1978). In Franks, the Supreme Court held that a search warrant issued on the basis of an affidavit must be voided if a defendant can demonstrate that the affidavit contains statements which are intentionally false, or were made with reckless disregard for the truth, and further, that purged of the false statements, the affidavit fails to support a finding of probable cause.

■ Kuntz has failed to satisfy the first branch of the Franks test. An examination of paragraph 10 of the affidavit demonstrates that the reversal of the order of leasing was neither intentional nor reckless. The true state of the facts–that the agents were seeking a warrant to search a room rented by Kuntz shortly after he had received complaints about chemical odors and frequent visitors at his 13th Street apartment–would have provided an equally strong foundation for a finding of probable cause as the circumstances described in the affidavit–that the agents wished to search

a premises about which Kuntz had received complaints, following which he had leased a second room. As a result, Agent Cavuto had no reason to falsify the facts. *See United States v. Kahan*, 572 F.2d 923 (2d Cir. 1978), *cert. denied*, 439 U.S. 833, 99 S.Ct. 112, 58 L.Ed.2d 128 (1979). In addition, Agent Cavuto may well have used the word "second" in the fourth sentence of paragraph 10 to describe the chronology of leasing, rather than to refer back to the second and third sentences of the paragraph, in which case the statement would not be incorrect.

Kuntz has also failed to show that Cavuto's description of the 83 Canal Street premises as an "apartment" was either intentional or reckless. There is no evidence that Agent Cavuto was aware that the loft space rented to Kay at 83 Canal Street was not used as residential space. But, even if he was, the use of the term "apartment" appears to have been purely descriptive. Cavuto's disclosure that the 83 Canal Street premises were leased under the name "Labtronics" signalled the commercial nature of the building, and controverts any claim that the inaccurate use of the term "apartment" was designed to mislead the Magistrate. The most that can be said is that use of the word "apartment," even when coupled with reversal of the order of leasing and the evidence of detection of chemical odors at 83 Canal Street discussed above, was negligent.

Accordingly, even assuming that these incorrect statements constituted "material misstatements," *see United States v. Kahan, supra* at 932, the failure to show that the false statements were made intentionally or recklessly precludes voiding of the affidavit on that basis. *See United States v. Barnes*, 604 F.2d 121, 152–153 (2d Cir.), *petition for cert. filed*, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979); *United States v. Edwards*, 602 F.2d 458, 465 (1st Cir. 1979). In any event, without any reference to the incorrect information contained in paragraph 10, the agents' observations and investigations provided a substantial basis for the Magistrate to find probable cause that controlled substances were being man-

ufactured in the 83 Canal Street premises. *United States v. Jackstadt, supra*, at 14.

■ Kuntz also contends that the search warrant was excessively broad and amounted to a general warrant. The warrant in this case described the property to be seized as "evidence of violations of Title 21, United States Code, Section 841, to wit, chemicals and equipment used in the manufacture of amphetamines and methamphetamines, as well as other evidence of said crimes." In *Andresen v. Maryland*, 427 U.S. 463, 478–482, 96 S.Ct. 2737, 2747–2749, 49 L.Ed.2d 627 (1976) a warrant which described specific property to be seized and then included the phrase "together with other fruits, instrumentalities and evidence of crime at this [time] unknown" was held to satisfy the specificity requirement of the Fourth Amendment, since the word "crime" in the quoted phrase "refers only to the crime of false pretenses with respect to the sale of Lot 13T," *id.* at 481, 96 S.Ct. at 2748–2749, the crime being investigated. The description in this case does not differ materially from that approved in *Andresen*, since a fair reading of the warrant indicates that it authorizes seizure only of chemicals and equipment used in the manufacture of amphetamines and methaphetamines in Room 406 at 83 Canal Street. *See also United States v. Dunloy, supra* at 10, 11; *United States v. Rivera*, 465 F.Supp. 402, 409–410 (S.D.N.Y.1979). Accordingly, the warrant was sufficiently specific to meet the requirements of the Fourth Amendment.

The final grounds claimed to require suppression is that the destruction by DEA agents of items seized from Room 406 was improper. The search warrant specifically authorized the agents to destroy any lithium aluminum hydride found on the premises, but directed the agents first to preserve a sample, photograph the chemical, and preserve all containers. During execution of the search warrant, the DEA agents followed this procedure with respect not only to the lithium aluminum hydride, but also as to other volatile or highly dangerous chemicals seized.

The Government contends that the destruction of the chemicals was reasonable even without judicial approval due to the dangerous nature of the chemicals. The Government points out that the procedure followed by the DEA agents was in accordance with DEA guidelines.

■ The court has been directed to no cases in which a court has reviewed the procedures followed here. Ordinarily it is improper for the Government to destroy any evidence seized pursuant to a search warrant without prior judicial approval. *See United States v. Poindexter*, 325 F.Supp. 786, 793 n. 27 (S.D.N.Y.1971). *See also United States v. Heiden*, 508 F.2d 898, 902–903 (9th Cir. 1974). However, the procedure followed in this case does not mandate suppression of evidence seized. Kuntz does not contest the fact that the chemicals destroyed were dangerous. When Cavuto applied for, and obtained, authorization to destroy lithium aluminum hydrate, he did not know whether other dangerous chemicals would be discovered in Room 406 or what they would be. The agents preserved a sample of each substance destroyed and photographed the chemicals and there is no evidence of any prejudice to the defendant.

■ The Supreme Court has held that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant..." *Dalia v. United States*, 441 U.S. 238, 257, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979). In that case, the Court held that the failure of executing officers to gain judicial approval for a covert entry to effect an authorized search did not invalidate the search. Similarly, in this case, it was within the authority of the executing officers to take reasonable steps to insure their own safety while preserving the evidence in a form which can be used at trial. While it was imprudent for the DEA Agents to destroy the evidence without gaining prior judicial approval, this procedure was not so improper as to require suppression of the evidence seized.

The motion to suppress is denied. Trial shall commence on March 10 at 10:00 a. m.

IT IS SO ORDERED:

---

APPENDIX A

# United States District Court

## FOR THE

### SOUTHERN DISTRICT OF NEW YORK

---

Docket No. _79_

Case No. 1415

UNITED STATES OF AMERICA

vs.

PREMISES KNOWN AS APARTMENT 406, 83 CANAL STREET AND ALL INGRESSES TO AND EGRESSES FROM SAID PREMISES

**AFFIDAVIT FOR SEARCH WARRANT**

BEFORE HONORABLE RUTH V. WASHINGTON
Name of Judge or Federal Magistrate Address of Judge or Federal Magistrate

The undersigned being duly sworn deposes and says:

That he has reason to believe that XXXXXXXXX (on the premises known as)

Apartment 406, 83 Canal Street, New York, New York

in the Southern District of New York

there is now being concealed certain property, namely chemicals and equipment used in the manufacture of amphetamines and methamphetamines and other controlled substances and other evidence of violation of Title 21, United States Code, Section 841

which are evidence of the federal crime of manufacturing controlled substances in violation of Title 18, United States Code, Section 841.

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

(See Attached Rider)

/s/ Alfred Cavuto
ALFRED CAVUTO
Special Agent, DEA

Sworn to before me, and subscribed in my presence.

---

## RIDER TO CAVUTO AFFIDAVIT

1. On November 21, 1979 I received a call from an employee at Matheson Gas Products, (hereafter "Matheson") East Rutherford, New Jersey, who stated that an individual, who identified himself as Bill Kay of P.R.K. Precision Chemical, (hereafter P.R.K.), 29 West 21st Street, New York City, had called the company regarding the purchase of a 20 pound cylinder of hydrogen chloride gas.

2. I have personally conducted an investigation at the premise of 29 West 21st Street. The directory there has no listing for P.R.K. I have been informed that a representative of the Consolidated Edison Company stated that there is no listing for a Bill Kaye or Kay or P.R.K. at 29 West 21st Street.

3. I have also been informed by an employee of Matheson that on November 21, 1979, Bill Kay called again and they advised him to pick up his order on Monday, November 26, 1979. On November 26, 1979, at approximately 4 p. m., I observed an individual whom I later learned, identified himself to the employees as Bill Kay, arrived at Matheson and purchased the above described quantity of hydrogen chloride gas. I have been informed by an employee at Matheson that the cylinder's total weight was approximately 85 pounds.

4. After the purchase Bill Kay was followed by Drug Enforcement Administration ("DEA") Agents, including Agent Russ Williams and myself, to the bus stop in East Rutherford, New Jersey where he boarded a bus to Port Authority. Agent Williams boarded the bus and followed Bill Kay across the main floor of Port Authority. I am informed by Agent Williams that due to the manner in which Bill Kay was rolling the cylinder bearing the labels "Hydrogen Chloride" and "Corrosive" across the floor, Bill Kay was stopped by three uniformed officers who temporarily detained and questioned him.

5. Agent Williams later advised me that he learned from one of the officers that the

individual gave as his name Bill Kay, that he carried no identification, that Kay had stated that the cylinder was for P.R.K. Chemicals on 21st Street, and that he lived at 42 Canal Street, New York City. Agent Williams has also advised me that he has conducted a physical search of the building at 42 Canal Street, and a search under Coles Directory for that building and that he found no listing for Bill Kay or P.R.K. Chemical Co. A check with Con Edison also shows no listing for either party in that building.

6. Agent Williams advised me that after he was released by the uniformed officers Bill Kay entered a cab carrying the cylinder. Agent Williams followed Kay to 83 Canal Street where Kay exited the cab. Enroute other agents and I joined the surveillance of Kay. I observed Kay roll the cylinder into 83 Canal Street, and held the door for him. I then offered him assistance in carrying the cylinder which he accepted. Together we carried the cylinder to the fourth floor where I noticed that there was the smell of chemicals on the floor. I walked with Kay to the door of an apartment where he pulled out his keys. I then left and went to one of the lower floors where Kay had left his umbrella on the way upstairs. After a few minutes I returned upstairs and knocked on the door to the same apartment. Kay answered "who is it?" and I told him that he had forgotten his umbrella. He opened the door, and I returned the umbrella. I could not see anything inside the apartment since the lights were out.

7. I am informed by Agent Williams that a few minutes after I entered the building he observed the lights in a fourth floor apartment go on. I later observed that the windows to that apartment are covered with spray paint. The apartment faces the intersection of Elldridge Street and Canal Street. I am also informed by Agent Williams that after I left the building, he went to the front of the building where he smelled ether.

8. Approximately 3 months ago, I was advised by DEA agents in Massachusetts that they were advised by employees of Ventron Corp. that an individual named Bill Kaye (different spelling) had placed an order for 10 pounds of lithium aluminum hydride. The chemicals were forwarded by Ventron Corporation to the office of Beacon Fast Freight in Greenpoint, Brooklyn. I observed that individual who was the same individual, Bill Kay, I observed on November 26, 1979 at Matheson, pick up the chemicals described above. Kay was placed under surveillance until DEA agents lost sight of him at 14th Street and Third Avenue, New York, New York.

9. I have been advised by Bill Phillips, a chemist at DEA that both hydrogen chloride gas and lithium aluminum hydride are chemicals which can be used in the production of amphetamines and methamphetamines, and that both chemicals are used toward the end of the process.

10. On November 27, 1979 Agent Williams was advised by a rental agent of the Building at 83 Canal Street that they rent two apartments to a Michael Kay. One apartment is Apartment 406, at 83 Canal Street and is leased under the name Labtronis by Michael Kay. The second Apartment is located at 243 E. 13th Street, Apartment 14, New York, New York and is leased under the name of Michael Kay. The second apartment was leased, according to the agent, after Kay was notified by letter of numerous complaints which had been made to the rental agent by co-tenants that Kay had numerous visitors leaving and entering his apartment at all hours of the night in an intoxicated state and that his apartment had drug odors emanating therefrom. An additional complaint was that he had erected a Flu pipe from his apartment to the roof in violation of his lease.

11. On November 27, 1979 I returned to the premises of 83 Canal Street, and observed that the apartment Kay entered on November 26, 1979 was between Apartments 405 and 407. There was no number on the door.

12. I am further advised by the DEA chemists that lithium aluminum hydride is

an extremly volatile chemical and is very dangerous. DEA chemists recommend destruction of these chemicals, as well as any other violatile chemical, at the scene of any seizure. It is therefore also requested that this warrant contain authorization for destruction of such chemicals believed to be highly volatile and dangerous.