**UNITED STATES of America,**

v.

**Donald PAUL, Defendant.**

**No. 87 Cr. 0284 (SWK).**

United States District Court, S.D. New York.

July 11, 1988.

Rudolph W. Giuliani, U.S. Atty. for the Southern District of New York, New York City by Martin Lotz, Asst. U.S. Atty., for Government.

Benjamin Brafman, P.C., New York City by Benjamin Brafman, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this criminal action, a grand jury has indicted defendant for one count of extortion under color of official right, in violation of 18 U.S.C. § 1951(b)(3) ("Hobbs Act"), and three counts of mail fraud, in violation of 18 U.S.C. § 1341 and 1342. Defendant has made a number of pre-trial motions pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure seeking orders (1) dismissing the indictment for failure to allege facts adequate to establish federal jurisdiction, (2) dismissing the indictment on the basis of prosecutorial misconduct in the grand jury, (3) suppressing $5000 cash seized pursuant to an allegedly defective search warrant, and (4) precluding the introduction of the $5000 at trial on the grounds that the cash is not relevant to the charges in the indictment.[1]

This prosecution stems out of defendant's alleged receipt of bribes as a public official in exchange for certain docking privileges on a City of New York pier during the 1986 Fourth of July Operation Sail celebration, commemorating the 100th anniversary of the Statue of Liberty, to which boats from various states and nations travelled.[2] The defendant worked as the chief dock master at the Department of Ports, International Trade and Commerce, a public agency of the City of New York responsible for port facilities and the City's waterfront. The indictment alleges that from February 1, 1986 through the date of the filing of the indictment in 1987, the defend-

---

1. Defendant also moves to dismiss the three mail fraud counts on the grounds that defrauding the public of its right to the honest and loyal services of public officials is defective as a matter of law in light of *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The government consents to the dismissal of the mail fraud charges, counts two, three and four, without prejudice. Accordingly, the Court orders these counts to be dismissed without prejudice.

2. The facts have been garnered from the indictment, unless otherwise noted, and are assumed true for the present purposes.

ant accepted "approximately $6,020 in cash payoffs under color of official right in exchange for providing space on the waterfront to dock a boat during the Fourth of July Operation Sail Festivities." Count 1, ¶ 5. The Complaint states that, based on the investigation of the police and information provided by a confidential informant, the defendant received payments from March 1, 1986 through September 30, 1986.

## Discussion

### 1. Legal Sufficiency of Indictment

#### a. Lack of Federal Jurisdiction

The Hobbs Act states in part: "Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by ... extortion ... shall be fined ... or imprisoned ..., or both." 18 U.S.C. § 1951(a). Defendant contends that the remaining extortion count in the indictment does not adequately allege a sufficient nexus between the alleged extortionate activity and interstate commerce. The Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion ..." *Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). The Second Circuit has held that the "effects on interstate commerce of the defendants' extortionate behavior need only be 'potential or subtle'." *United States v. Curcio*, 759 F.2d 237, 241–42 (2d Cir.1985) (quoting *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir.1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 (1982)), *cert. denied sub nom. Hawley v. United States*, 474 U.S. 848, 106 S.Ct. 142, 88 L.Ed.2d 117 (1985).

While federal jurisdiction is expansive, however, the Court cannot ignore or nullify the constitutional and statutory requirement that there be a nexus between the extortion and interstate commerce.

*United States v. Mattson*, 671 F.2d 1020, 1023 (7th Cir.1982). At the very least, the extortionate activity must affect or potentially affect some commercial transaction in interstate commerce, and that effect must not be one manufactured by the government to create jurisdiction. *United States v. Brantley*, 777 F.2d 159, 162 (4th Cir. 1985), *cert. denied*, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986) (citing *United States v. Archer*, 486 F.2d 670, 681–82 (2d Cir.1973) (discussing jurisdiction in Travel Act case)).

In the present case, the indictment does not provide facts by which this Court could determine whether interstate commerce has been or might have been affected. Nonetheless, the indictment states that the "extortion would and did thereby obstruct, delay and affect commerce ..." The Second Circuit has determined that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime ..." *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). As this Court recently stated, it is "well established that a facially valid indictment ... may not be challenged on the ground that it was based on inadequate evidence." *United States v. Payden*, 613 F.Supp. 800, 809 (S.D.N.Y.), *aff'd*, 768 F.2d 487 (2d Cir. 1985) (citations omitted). The present indictment satisfies the requirement of tracking the statute sufficient to allow the defendant to defend against the charges. *United States v. Barrett*, No. 85 Cr. 472 (JFK), slip op. at p. 1 (S.D.N.Y. August 22, 1985). In *Barrett*, the defendant also challenged the sufficiency of the indictment's pleading of federal jurisdiction and found that the indictment was adequate since it tracked the language of the statute. *Id.* at p. 2.[3]

---

**3.** The *Barrett* Court nonetheless considered defendant's "nexus" argument. This Court cannot reach any firm conclusions based on the sketchy factual record before this Court. Since the indictment is facially valid, the Court will

not dismiss it for failure to establish a jurisdictional nexus. The government will still have to prove to the jury the elements of the jurisdictional requirements.

### b. Under Color of Official Right

█ Defendant also argues that he cannot be convicted of extortion under color of official right since government agents induced him to accept the money and since defendant did not offer the agents a *quid pro quo* in exchange for the money. The government has not responded to this argument. Extortion under color of official right occurs "when a public official makes wrongful use of his office, ..." *United States v. O'Grady*, 742 F.2d 682, 684 (2d Cir.1984) (quoting *United States v. Margiotta*, 688 F.2d 108, 130–31 (2d Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983)). The indictment states that defendant worked for a public agency and accepted money under color of official right in exchange for allowing a boat to dock at the New York pier. The indictment adequately charges defendant, tracking the language of the statute, in accord with the requirements set forth in *Tramunti, supra*, 513 F.2d at 1113. Defendant, of course, may raise this defense at trial for the jury's consideration. Accordingly, defendant's motion to dismiss the indictment for failure to establish a jurisdictional nexus and because defendant did not act under color of official right is denied.

### 2. Prosecutorial Misconduct

█ Defendant claims he was prejudiced before the grand jury because the prosecutor failed to present statements he made on tape to undercover informants to the effect that he did not accept bribes and that he did not want any money in exchange for the favors requested. Defendant made these statements on the second of approximately one-hundred taped conversations. The government argues that the conversations were not "clearly exculpatory", *United States v. Page*, 808 F.2d 723, 728 (10th Cir.) (adopting the standards enunciated in *Ciambrone* by the Second Circuit), *cert. denied*, — U.S. ——, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987), since the grand jury had before it other evidence which confirmed that at a later date the defendant had in fact accepted money in exchange for obtaining dock space. Noting that the prosecutor is not obligated to present all possible defenses to a grand jury, *United States v. Romano*, 706 F.2d 370, 374 (2d Cir.1983), the government argues that the prosecutor was under no obligation to present the evidence to the grand jury since the material which defendant claims was improperly withheld would only support an entrapment defense.

█ This Court agrees. Dismissal of an indictment for prosecutorial misconduct has been termed a "most drastic remedy" and is "warranted only in extreme circumstances, when it is necessary to eliminate prejudice to the defendants, or to ensure that the government attorney acts in accordance with the law." *Id.* at 374. The function of the grand jury is to determine whether probable cause exists to suggest that the defendant committed the crime. *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir.1979). A prosecutor has an obligation to present to the grand jury "any substantial evidence negating guilt ..., at least where it might reasonably be expected to lead the jury not to indict." *Id.* at 623. Though in the government's possession at the time the grand jury was called, the excluded evidence here does not in and of itself negate guilt in light of the other inculpatory evidence presented to the grand jury. The evidence in question here would not have reasonably led the jury not to indict under these circumstances.

█ Additionally, in this Circuit, the prosecutor need not search for or provide evidence to support a putative defense. *Romano, supra*, 706 F.2d at 374; *Ciambrone, supra*, 601 F.2d at 622. Since the evidence in question here concerns defendant's predisposition at an early stage in the investigation to commit the crime, evidence which may support an entrapment defense, the government was not obligated to present it to the grand jury. While the grand jury may have benefitted from a more complete presentation of the facts, the prosecutor's failure to provide the evidence in question does not impress this Court as "fundamentally unfair" nor can it be said to have "misled" the grand jury.

*See Ciambrone, supra,* 601 F.2d at 623. The evidence presented to the grand jury was sufficient to establish probable cause, and the Court does not believe that the omitted evidence, if presented, would have reasonably led the jury not to indict. Accordingly, defendant's motion to dismiss the indictment based on prosecutorial misconduct is denied.[4]

### 3. Validity of Search Warrant

Defendant claims that at the time the search warrant was issued to search his apartment, probable cause did not exist to believe that cash proceeds from any extortionate behavior would be found. Defendant argues that the information presented to the magistrate who authorized the warrant was "stale" in regard to the presence of cash since the last event stated in the affidavit took place at the end of September, 1986, some five months prior to the issuance of the warrant on March 11, 1987. The defendant does not question the validity of the warrant in regard to the other items seized.[5] The government argues that the information in the affidavit supporting the warrant was not stale since the affidavit described a continuing pattern of illegal activity.

The "existence of probable cause in a given case is determined by reference to the totality of circumstances as set forth in the affidavits ..." *United States v. Payden, supra,* 613 F.Supp. at 814 (citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In addition, the magistrate's "finding of probable cause is entitled to substantial deference." *Id.* at 815 (quoting *United States v. Travisano,*

724 F.2d 341, 345 (2d Cir.1983)). Doubts in close cases are to be resolved in favor of the magistrate's findings. *Id.*

It is also true, however, that "the facts presented in an affidavit must be sufficiently related to the time of the issuance of the warrant to establish probable cause at that time." *United States v. Kuntz,* 504 F.Supp. 706, 709 (S.D.N.Y. 1980); *see also Sgro v. United States,* 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932) ("it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time"); *United States v. Brinklow,* 560 F.2d 1003, 1005 (10th Cir.1977) ("The substantial question is whether probable cause existed at the time the warrant issued to believe that the items were still located at the home"), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978). The Second Circuit has identified a number of factors which the Court should consider in deciding whether information in an affidavit is stale. These factors include the currency and specificity of the information, the reliability of the sources of information, the nature of the alleged criminal activity, the duration of that activity in the location in question and the nature of the evidence being sought. *United States v. McGrath,* 622 F.2d 36, 42 (2d Cir.1980). Finally, and the point upon which the government relies, "[w]hen the affidavit describes a continuing course of illegal conduct, the passage of time between the last described act and the application of the warrant becomes less significant." *Payden, supra,* 613 F.Supp. at 814 n. 10 (citing *United States*

---

4. The Supreme Court recently decided that dismissal is not warranted, at least in a case in which nonconstitutional errors are alleged, unless it is "established that the violations substantially influenced the grand jury's decision to indict" or that there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. *Bank of Nova Scotia v. United States,* —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986)). Applying this standard, it is clear to the Court that the alleged violations did not substantially influence the grand jury to indict.

5. The warrant authorized the search of certain premises for "safe deposit box receipts or keys, check books, savings books, bank account statements, money market account statements, credit card statements, checks, receipts, cash, money orders, cashier's checks, money market and brokerage account statements, securities, financial instruments, financial records, tax returns and income tax files, for the period from March 1, 1986 to September 30, 1986, ..." Exhibit B to Affidavit of Benjamin Brafman.

*v. Castellano,* 610 F.Supp. 1359, 1437 (S.D. N.Y.1985); *Kuntz, supra,* 504 F.Supp. at 709).

▮▮ In this case, the affidavit presented to the magistrate states that on September 26, 1986 the defendant allegedly told a confidential informant that he had a total of eleven bank accounts in Florida, New York, Arizona and California. The complaint states that the same confidential informant provided information that the defendant received the money in question between March 1, 1986 and September 30, 1986, thus making this latter date the last date alleged in the affidavit. The search warrant was issued on March 11, 1987, approximately five and one-half months later. The Court concludes that, based on the various factors listed above, the information in the affidavit was stale as regards the cash seized.

First, the Court concludes that the complaint and the affidavit in support of the warrant do not describe a "pattern of continuing illegal activity" as that term has been used in the cases which the government cites. When the illegal activity described in the affidavit is ongoing and continuous, courts have reasonably inferred that information in a supporting affidavit does not become stale with the passage of time. In *Kuntz, supra,* the Court decided that the description of a "prior purchase" of certain chemicals in the supporting affidavit was not stale since other information in the affidavit "indicated continuing illegal manufacture of controlled substances." 504 F.Supp. at 709. Furthermore, the affidavit stated that the defendant had made a purchase of the same chemicals, which are apparently used to make drugs, only three days prior to the issuance of the warrant. Under these circumstances, the more recent purchase created the inference that these chemicals were being used in an "ongoing drug manufacturing operation", one that existed at least as recently as three

days prior to the issuance of the warrant. *Id.*

In *Castellano, supra,* the Court rejected a staleness argument based on information in the affidavit which "details a continuing course of illegal activity ... spanning a seven-year period, with the last documented incident occurring one year prior to the application ... Under these circumstances, the continuing nature of the alleged illegal conduct renders the passage of time between the last described act and the application less significant." 610 F.Supp. at 1437 (citation omitted). The supporting information was not stale in *Castellano* given the continuing nature of the illegal scheme.[6]

Finally, the *Payden* Court decided, without discussion, that the continuing nature of the alleged illegal activity made the passage of time less significant and on that basis rejected the defendant's staleness argument. 613 F.Supp. at 814 n. 10. Payden and others were under indictment for conspiracy to violate the narcotics laws and for a continuing criminal enterprise, among other things. The conspiracy allegedly spanned over five years and involved at least nine separate overt acts. *Id.* at 808. Again, the evidence supporting probable cause was not stale since the criminal activity was of an ongoing nature.

In the case before this Court, the illegal activity allegedly spanned only eight months, at the very most, and nothing in the record suggests that any illegal activity continued past September 30, 1986. The record suggests, assuming all the information to be true, that the defendant accepted two bribes, that payments were made over the course of a few months, and that he had numerous bank accounts across the country. Both alleged acts of extortion concerned providing dock space at the Operation Sail festivities. Nothing in the record suggests that similar illegal acts

---

**6.** It is unclear from the Court's opinion whether it meant to say that the mere length of the illegal activity in the past made it reasonable to infer that probable cause was still present or that the ongoing nature of the activity, which was continuing into the present or very recent past, made it reasonable to infer that probable cause still existed—even though the information in the supporting affidavit was one-year old. This Court believes that the latter reasoning is the more persuasive.

took place before or after the Operation Sail program. These facts do not describe a continuing or ongoing pattern of illegal activity. Accordingly, the Court cannot infer that probable cause would continue to exist for over five months based on the continuing nature of the illegal activity.

Another factor which weighs in defendant's favor is the nature of the property sought. If the property sought is the type which can be expected to remain in one location over a period of time, courts have concluded that probable cause reasonably continues to exist over a more extended period of time. *Andresen v. Maryland,* 427 U.S. 463, 478 n. 9, 96 S.Ct. 2737, 2747 n. 9, 49 L.Ed.2d 627 (1976); *see also McGrath, supra,* 622 F.2d at 42; *Brinklow,* 560 F.2d at 1006; *United States v. Myers,* 553 F.Supp. 98, 105 (D.Kan.1982). In *McGrath,* the Second Circuit concluded that the information in the supporting affidavit was not stale because the material sought was "relatively permanent bookmaking [and gambling] paraphernalia." 622 F.2d at 42. The *Brinklow* court held that the information in the supporting affidavit was not stale because "the articles in controversy were items which could reasonably be expected to be kept [at the location] for extended periods of time." 560 F.2d at 1006. The court noted that each of the articles sought were designed for long-term use and were not contraband or other similar items "likely to be disposed of for any other readily apparent reason." *Id.*

The *Myers* decision, cited by the defendant, is of particular interest here. That case involved an allegation that the defendant had illegally sold unregistered pesticides. A warrant was issued in March, 1982, authorizing the seizure of certain aerosol spray cans of pesticide and various business records. The court reasoned that it was unreasonable to infer that probable cause would exist eleven months later for perishable unregistered pesticides, whereas it was reasonable to infer that business records would still be present after such a period of time:

Sales records which are kept in the ordinary course of business are likely to be maintained, are not inculpatory *per se* and constitute mere evidence of a violation. On the other hand, an unregistered pesticide is a perishable, transportable commodity which, in legal parlance, constitutes contraband or an instrumentality of crime. Thus, an individual would be likely to move or dispose of an unregistered pesticide over a period of time. The same inference may not be made for business records which serve a legitimate accounting purpose. *Id.*

The same logic, when applied to the facts of this case, suggests that cash and financial records are two distinguishable types of property for which different inferences are appropriate. While it is reasonable to infer that an individual like Mr. Paul would keep bank statements, safe deposit box information or keys and other financial records or instruments in his house over an extended period of time, it is not reasonable to infer that he would keep the $5000 cash proceeds of his illegal extortionate behavior for over five months in one place. Ill-gotten sums of cash, especially in this relatively small amount, are easily transportable. Given the evidence concerning the existence of various bank accounts, it is more reasonable to infer that an extortionist would seek to disperse or spend his booty in an attempt to hide it. *Cf. United States v. Van Ert,* 350 F.Supp. 1339, 1340 (E.D.Wisc.1972) (it was not reasonable to infer that moveable, personal property would be present 55 days after last seen at place to be searched); *but cf. United States v. Jackson,* 756 F.2d 703, 705 (9th Cir.1985) (probable cause to believe that defendant would have all or some of the $228,241 proceeds of a bank robbery in his residence two months after robbery).

This Court concludes that it was not reasonable in March, 1987, to expect to find a relatively small amount of cash received at least over five months previously in the defendant's home, especially when the defendant had received the bribe money over a period of a few months, when the defendant apparently had numerous bank accounts and when only two seemingly isolated instances of extortion are alleged. Ac-

cordingly, defendant's motion to suppress the $5,000 seized pursuant to the March 11, 1987 search warrant is granted.[7]

### Conclusion

For the reasons stated above, defendant's motion to dismiss the indictment for legal insufficiency and lack of federal jurisdiction is denied; defendant's motion to dismiss the indictment for prosecutorial misconduct before the grand jury is denied; and defendant's motion to suppress the $5,000 cash seized on the grounds that the search warrant was based on stale information is granted. The mail fraud counts of the indictment are dismissed without prejudice upon consent of the parties. The Court does not reach defendant's motion to preclude the introduction of the $5,000 at trial.

SO ORDERED.

---

7. The Court therefore does not reach defendant's motion to preclude the introduction of the $5,000 at trial on the basis of relevancy.